IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL TAYLOR,            ) | |
|     Plaintiff,       ) | Civil Action No. 7:20-cv-00121 |
|                                   ) | |
| v.            ) | |
|                                   ) | By: Elizabeth K. Dillon |
| CARL MANIS, *et al.*,       ) | United States District Judge |
|     Defendants.      ) | |

**MEMORANDUM OPINION**

Plaintiff Daniel Taylor, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. His amended complaint names eight defendants, and his claims stem from events that occurred at Wallens Ridge State Prison ("WRSP"), where he was housed at all relevant times. He alleges generally that defendants Stacy, Williams, Carber, Church, Hylton, and Osborne maliciously interfered with his access to the court, in violation of his First Amendment rights. (Am. Compl. 4, Dkt. No. 11.) He lists a number of incidents that he says are proof of this, and they will be discussed in context below.

Pending before the court are two motions by defendants to dismiss the amended complaint. The first was filed by all defendants except Williams. The second was filed solely by Williams, but it raises the same basic grounds. Also pending before the court is Taylor's motion to amend, which defendants oppose.

For the reasons set forth herein, the court will grant both motions to dismiss and deny Taylor's second motion to file his second amended complaint, because amendment would be futile. Additionally, because Taylor has now had multiple opportunities to amend, including one after defendants pointed out deficiencies in his complaint, but he has still failed to state a claim, the court exercises its discretion to dismiss his claims with prejudice. *See Carter v. Norfolk*

*Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) (explaining that when dismissing pursuant to Rule 12(b)(6), the determination as to whether to dismiss with or without prejudice is within the district court's discretion).

## I. BACKGROUND

Taylor alleges that defendants collectively deprived him of his access to the courts. Critically, however, nowhere does his amended complaint identify the case names or numbers of the cases or what claims they asserted, other than a reference to a "habeas corpus" action and general references to § 1983 cases. Nor does he identify any specific way in which any case was affected by the actions of any particular defendant.

Taylor's amended complaint contains a laundry list of incidents that he says infringed his court access. Specifically, he bases his claims on the following alleged actions by defendants:

1. Stacy confiscated and threw away legal materials belonging to Taylor, including legal mail receipts, informal complaints, and grievance forms submitted by Taylor that were "vital" to his "litigating." (Am. Compl. 4.)

2. On an unknown date, Stacy threw away a habeas corpus filing completed by Taylor when she was packing his belongings.

3. At some point in 2017 or later, Stacy threw away a legal book called "Essential Lawyering Skills," which Taylor used for reference in his pending lawsuits, and also threw away three computer books. He states that these materials were "critical" to a number of § 1983 lawsuits that were pending at the time. (*Id.*)

4. In Spring 2018, Hylton and Church collected legal mail from Taylor, but that mail did not arrive at the court.

5. Taylor believes the mail went "missing" as retaliation for other complaints and grievances Taylor had filed against Church.[1]

---

[1] Taylor alleges other actions by Church, and—although the amended complaint is not entirely clear—the court interprets it as Taylor alleging that this other behavior was the subject of the prior grievances he brought against Church. He does not appear to be seeking relief for these underlying incidents in this lawsuit. For example, he states that he had filed grievances about Church's threatening to set Taylor's cell on fire and not replacing bread that fell outside of Taylor's cell. Taylor alleges that these prior actions occurred "under [Church's] supervision of the food distribution process during a religious commemoration." (Am. Compl. 5.)

6. The grievance coordinator (who is not named as a defendant) refused to provide documents he requested, and so Taylor could not include claims based on those grievances in an earlier civil action.

7. Around Spring 2019, Carver and Williams refused to collect Taylor's legal mail on more than one occasion, which "jeopardized" a court date.[2]  (*Id.* at 6.)

8. On an unknown date, Osborne threatened to withhold paperwork ordered by a court unless Taylor withdrew a pending informal complaint.  Osborne also refused to have a document notarized for a habeas corpus case and refused to have a financial from generated by the business office.

9. Although Taylor does not attribute it to any particular defendant in his amended complaint, he states that he has been given inadequate access to legal materials from the WRSP law library.  In particular, he alleges that it takes weeks or months to get materials he requests and that materials are sometimes missing pages.

(*Id.* at 4–7.)

In summarizing his claims, Taylor asserts that he is only bringing a Fourteenth Amendment violation.  He concludes by arguing that "the legal standard . . . is met by the several instances where civil actions were dismissed." (*Id.* at 7.)  Again, though, he does not identify which civil actions were dismissed or what underlying claims they contained.

## II.  DEFENDANTS' MOTIONS TO DISMISS

### A.  Legal Standard for Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  In considering the motion, the court must construe the facts and reasonable inferences "in the light most

---

[2] Taylor also makes a vague reference to a non-defendant, Officer Caudill, who did something "on that night," but he does not remember the "exact situation."  (Am. Compl. 6.)

3

favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

Defendants contend that the amended complaint should be dismissed against all defendants, and they assert a number of grounds for dismissal. The court need not address all of them,[3] but it concludes that Taylor's amended complaint fails to state a claim against any defendant.

**B. Specific Defendants**

Defendants' motion asks for dismissal of defendants Clarke, Manis, Hylton, and Church because of a failure to allege sufficient personal involvement. The court agrees that these defendants are subject to dismissal on this basis.

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted). Importantly, liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally" in the violation of plaintiff's rights and

---

[3] Defendants correctly note that Taylor cannot bring claims for money damages against defendants in their official capacities. (Mem. Supp. Mot. Dismiss 5, Dkt. No. 27.) Such claims must be dismissed.

4

affirming dismissal of claim where plaintiff did not allege personal involvement by defendant) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Because Taylor fails to identify any action or omission by the defendants listed in the preceding paragraph, those defendants will be dismissed.

As to defendants Clarke and Manis, Taylor does not allege any action by them; they simply are listed in the caption of his amended complaint and then their positions are set forth in a list of the defendants. It appears, therefore, that Taylor has named them because they are the director of VDOC and warden of WRSP, respectively. There is no respondeat superior liability under § 1983, however. *Vinnedge*, 550 F.2d at 928–29. Instead, a supervisory official may be held liable if his own actions allowed his subordinates to violate a plaintiff's constitutional rights. "In order to succeed on a § 1983 claim for supervisory liability, a plaintiff must show: (1) that the supervisor had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Not only has Taylor failed to otherwise state a constitutional violation, as the court discusses below, but he also has wholly failed to state any facts on which Clarke or Manis could be liable under such a theory. Accordingly, those two defendants must be dismissed.

As to defendants Hylton and Church, all that Taylor's amended complaint alleges is that they picked up his mail and that the mail did not arrive at the court. He does not allege that

either of them did anything with the mail or was in any way responsible for the mail not arriving at the court. Thus, all he alleges that they did was pick up mail that eventually was not delivered. This is insufficient to state a constitutional claim. Thus, as to any claim against them that they denied Taylor access to the courts, Hylton and Church must be dismissed. The court discusses separately a potential retaliation claim against Church. (*See infra* Section II-D-3.)

## C. Denial of Access to Courts

As noted, Taylor claims are mostly premised on an assertion that defendants have interfered with his right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351–53 (1996) (discussing the right generally). The right of access to the court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, in order to state a constitutional claim of denial of access to the courts, a plaintiff must allege facts showing that the challenged action has actually "hindered his efforts to pursue" a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351. Specifically, the plaintiff must identify in his complaint a "nonfrivolous," "arguable" legal claim, along with the potential remedy that claim sought to recover, that was lost as a result of the defendant's alleged interference with the plaintiff's right of access. *Christopher*, 536 U.S. at 415–16 (quoting *Casey*, 518 U.S. at 353). Put differently, the cause of action in the underlying action, "whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. *Id.* at 415.

Taylor's amended complaint wholly fails to satisfy that standard. Instead, he simply references a "habeas corpus action" and refers in general terms to other potential or actual cases. As noted previously, however, he fails to provide case names or numbers, or even in which

courts these cases were filed.[4] Importantly, moreover, he does not identify any "nonfrivolous" "arguable" legal claim that he lost as a result of any defendant's conduct.

His amended complaint also fails to allege any specific action that resulted from any defendant's actions. For example, he states that Stacy threw away a habeas corpus filing, but he does not allege that the filing was necessary to his case or that he was unable to submit another such filing without missing a deadline. Likewise, he does not allege that the lost piece of mail collected by Hylton and Church had any prejudicial effect on the case to which it related. Lastly, although he states that Carver and Williams's refusal to collect his mail "jeopardized" a response date, he does not indicate that the case was actually dismissed or that he could not obtain an extension. This lack of specificity as to any resulting harm also renders his claims subject to dismissal.

Because Taylor has failed even to identify any claim that was dismissed or that he lost the right to litigate as a result of any alleged interference by any defendant, all of his claims based on a denial of access to the court are subject to dismissal.

### D. Other potential claims

Because the amended complaint, liberally construed, might also be asserting a claim of interference with the grievance process, a deprivation of property claim, or a retaliation claim, the court also addresses the viability of each of those claims briefly. Insofar as defendants have not directly addressed these claims in their motions to dismiss, the court nonetheless finds the claims subject to dismissal under 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii).

---

[4] A review of cases filed by Taylor in this court does not disclose which, if any, of his cases may have been affected by the defendants' actions. Beginning in 2017 (which is the first specific date on which Taylor alleges any interference), Taylor has filed a number of civil actions with this court. Indeed, from November 2017 through the date he had filed his first complaint here (in February 2020), he filed eight § 1983 cases in this court. In 2020, including this case, he filed four. Although many of these are now closed, the court could only speculate as to whether the events he alleges had any effect at all on the claims in any of those cases.

### 1. Interference with Grievance Process

First, any claim that a defendant interfered in Taylor's filing of internal prison grievances or in the grievance process does not give rise to an independent constitutional claim. The Fourth Circuit held in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), and reiterated more recently in *Booker v. South Caroline Department of Corrections*, 855 F.3d 533 (4th Cir. 2017), that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Id.* at 541; *see Adams*, 40 F.3d at 75 ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *E.g.*, *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Thus, any claim against defendants that affected only the grievance process must be dismissed.

Moreover, Taylor does not identify with any particularity any nonfrivolous, underlying claim that he lost the ability to pursue as a result of any interference with the grievance process. Accordingly, his allegations about that do not support a denial of access to the courts claim, either.

### 2. Claim of Property Loss

To the extent that Taylor's allegations concerning the loss of his legal materials or books

are intended to assert a claim that he was deprived of his property, they likewise fail to state a constitutional violation. Allegations that prison officials deprived an inmate of his property, whether intentionally or as a result of negligence, do not state any constitutional claim "if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Because plaintiff possessed tort remedies under Virginia state law, see Virginia Code § 8.01–195.3, it is clear that he cannot prevail in a constitutional claim for the alleged property loss in this case.[5] Thus, his claims based on the loss of his property must be dismissed.

### 3. Retaliation Claim

The only other possible claim the court could perhaps infer from Taylor's claims is a retaliation claim against Church. Specifically, he alleges that Church collected legal mail from him and that it never arrived at court. He then attributes this to Church retaliating against him for previously filing grievances in which Taylor complained about Church's conduct.

To succeed on his First Amendment retaliation claim, Taylor must establish that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citing *Martin v. Duffy*, 858 F.3d 239, 249) (4th Cir. 2017)) (alterations omitted).

The Fourth Circuit recently concluded that courts should apply the "same-decision test" of *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), in determining the causation element of a prisoner's First Amendment retaliation claim. *Martin*,

---

[5] Taylor is not claiming that his property was destroyed pursuant to a prison policy, so the court need not address the slightly different analysis for a deprivation pursuant to policy, which can sometimes require pre-deprivation procedures. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that a violation occurs only if the procedural protections in the policy are inadequate to ensure that deprivations are lawful).

9

977 F.3d at 299. Under that framework, once the prisoner-plaintiff shows that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action," then the burden shifts to the defendant to prove a permissible basis for taking that action. *Id.* at 300. "'If the defendant fails to carry that burden, the inference is that 'but for' causation . . . has been shown: the plaintiff would not have been harmed had his rights not been violated by the defendant.'" *Id.* at 299 (quoting *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011)).

Here, Taylor cannot satisfy his initial burden to show that his "protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action." *See id.* at 300. As noted above, he does not even allege that Church himself was responsible for the mail not arriving at the court. Furthermore, he offers nothing, other than rank speculation, that the failure of the piece of mail to arrive at the court—even if Church were responsible—was related in any way to the fact that Taylor had filed grievances against Church.

Particularly in light of the Fourth Circuit's instructions that courts must treat an inmate's claim of retaliation by prison officials "with skepticism," *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996), and that conclusory allegations of retaliation are insufficient to survive dismissal, *see Adams*, 40 F.3d at 74, there are insufficient allegations in Taylor's complaint to support a retaliation claim. Accordingly, to the extent he intended to assert a retaliation claim against Church, it will be dismissed.

### III. TAYLOR'S MOTION TO AMEND

As noted, Taylor also has filed a motion to file a second amended complaint, providing the proposed pleading. Taylor's proposed second amended complaint purports to add three new defendants: library supervisor Thomas Jones and correctional officers Cochran and Smith. It

also adds some—but very limited—detail concerning his original claims. (*See generally* Proposed Second Am. Compl. ¶ 42.) The court has considered the additional and new allegations, but it concludes that the proposed second amended complaint does not remedy the deficiencies in the amended complaint, as identified above. In particular, as with the amended complaint, Taylor's latest proposed pleading fails to identify an arguably nonfrivolous claim that he was prevented from pursuing as any defendant's conduct.

For example, Taylor's proposed second amended complaint adds detail to his claim against Osborne, alleging that Osborne refused or delayed notarizing Taylor's legal documents and failed to obtain financial statements for court filings, which resulted in the dismissal of an unidentified compliant. (Proposed 2nd Am. Compl. 9–11, Dkt. No. 42.) Even that, though, fails to specify which case was dismissed, fails to make clear whether it was Osborne or Taylor who was responsible for obtaining the financial forms, and fails to identify any arguably nonfrivolous claim that was part of the underlying complaint that Taylor lost the ability to litigate. Importantly, moreover, a dismissal in this court for a failure to timely return financial forms would be a dismissal without prejudice, leaving Taylor free to re-file his claim, subject to any applicable statute of limitations. (*See, e.g.*, *Taylor v. Mannis*, Case No. 7:18CV58, Dkt. No. 4 (W.D. Va. Feb. 28, 2018) (order dismissing case without prejudice for failure to return financial forms and before the filing fee was assessed).) For all of these reasons, the new pleading still fails to state a claim against any defendant.

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend may be denied, among other circumstances, where "the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (citation omitted). A proposed amendment is futile when it "is clearly insufficient or frivolous on

11

its face" and thus would be subject to dismissal. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Here, amendment would be futile because, as just discussed, the additional allegations that Taylor proposes do not save his claims from dismissal. Accordingly, Taylor's motion to amend (Dkt. No. 38) will be denied.

## IV. CONCLUSION

Because Taylor's amended complaint fails to state a constitutional claim under § 1983 against any defendant, both motions to dismiss will be granted. Additionally, because Taylor's proposed second amended complaint does not remedy the deficiencies with his claims, the court will deny his motion to amend as futile.

An appropriate order will be entered.

Entered: February 11, 2021.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
United States District Judge